UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA THOMSON,<br><br>*Plaintiff*,<br><br>-against-<br><br>THE RESEARCH FOUNDATION FOR THE SUNY STONY BROOK UNIVERSITY,<br><br>*Defendant*. | Civil No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Donna Thomson ("**Plaintiff**"), by and through her counsel, Cervini Law Group PLLC, as and for her Complaint against defendant The Research Foundation for the SUNY Stony Brook University ("**Defendant**"), alleges as follows:

1.  This is an action brought by Plaintiff (the "**Action**") to recover damages against Defendant for its continuous and pervasive violations of her rights under the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621 *et seq.* ("**ADEA**") and the New York State Human Rights Law, N.Y. Exec Law § 296 *et seq.*

2.  Plaintiff has been damaged by the wrongful actions of Defendant and seeks the following by this Action: (i) compensatory and punitive damages; (ii) a declaration that Defendant has violated Plaintiff's rights in violation of the ADEA, and the New York State Human Rights Law; (iii) reasonable attorney's fees, costs, and expenses incurred in prosecuting this Action; and (iv) all such other relief as may be just and proper.

**I.    JURISDICTION AND VENUE**

3.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 623. This Court has supplemental jurisdiction over Plaintiff's New York State law claims

pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal law claims.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## II. JURY DEMAND

5. Plaintiff is entitled to and demands a jury trial.

## III. PARTIES

6. Plaintiff, during all relevant times, was and still is an individual residing in the State of New York within this District, with a current residence located at 116 Singingwood Drive, Holbrook, New York 11714.

7. Defendant is a private non-profit corporation associated with Stony Brook University providing services pursuant to the laws of the State of New York.

8. At all relevant times, Defendant had and still has at least twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. Therefore, Defendant is an "employer" for purposes of 29 U.S.C. § 630 and under N.Y. Exec. Law § 292.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. On or about July 14, 2023, Plaintiff filed a Charge of Discrimination against Defendant with the New York District Office of the EEOC, Charge No. 520-2023-05702, charging Defendant with unlawful age discrimination in connection with Plaintiff's dismissal from her employment.

10. As this is a violation of Plaintiff's rights under the ADEA, a Notice of Right to Sue is not required under applicable law.

11. Plaintiff has filed this Action more than sixty (60) days after filling the Charge of Discrimination.

## V. **PRELIMINARY STATEMENT**

12. During the course of her employment with Defendant, Plaintiff was repeatedly subjected to pervasive discrimination and harassment based on her age. When she complained of this conduct, she was retaliated against and received further mistreatment. Such harassment and retaliation were perpetrated by various supervisors employed by Defendant.

13. Defendant knew or should have known of the improper and unlawful conduct of its agents, representatives, and employees and should have taken timely and appropriate corrective action. The improper and unlawful conduct and communications of Defendant and its employees substantially interfered with Plaintiff's employment and created an intimidating, hostile, and offensive work environment in violation of the ADEA and applicable New York law.

14. Defendant's failure to investigate and/or take corrective action in response to Plaintiff's complaints constitutes discrimination based on age, which culminated in the discriminatory and retaliatory treatment of Plaintiff.

15. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income, including, *inter alia*, wages and benefits. Further, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation which has manifested itself in physical illness and emotional distress.

16. As a result of Defendant's unlawful conduct, Plaintiff is entitled to damages as set forth below.

## VI. STATEMENT OF FACTS

### A. Background

17. Plaintiff is a sixty-four (64) year old woman who was employed by Defendant from July 11, 2022 to May 31, 2023.

18. Plaintiff is a highly-qualified Registered Nurse with over forty-two (42) years of nursing experience, including roles as a Clinical Nurse and Nurse Administrator at respected hospitals, such as Stony Brook University Hospital, Springhill Regional Hospital, St. John's Episcopal Hospital, and St. Catherine of Siena Hospital.

19. Throughout her career, Plaintiff consistently received positive performance evaluations, promotions, and raises. She was never reprimanded or "written-up" for poor work performance or HIPAA violations.

20. Plaintiff has always been an exemplary employee and nurse manager in all of her previous roles prior to working for Defendant.

### B. The WTC Health and Wellness Program

21. On June 16, 2022, after twenty-one (21) successful years at St. Catherine of Siena Hospital, Plaintiff interviewed for a Senior Nursing Administrator position at the WTC Health and Wellness Program (the "**WTC Health Program**").

22. The WTC Health Program is administered by Defendant, a private non-profit associated with Stony Brook University that has a distinct medical record and reporting system from other clinics both in and outside the Stony Brook University health system.

23. The WTC Health Program outlined specific education and skill requirements for this Senior Nursing Administrator position, all of which Plaintiff possessed.

24. On June 22, 2022, Plaintiff had a second interview with Dr. Jeffrey K. Low, the Co-Medical Director of the WTC Health Program. During the interview, Dr. Low remarked how qualified Plaintiff was for the position with a focus on her forty-two (42) years of total experience -- specifically, her twenty-one (21) years of experience in Nursing Administration at St. Catherine of Siena Hospital.

25. During the interview process, Dr. Low, as well as Julie Broihier, the Administrative Director, each discussed the distinctive nature of the WTC Health Program and how it was vastly different than other hospitals due to its unique focus which provided no-cost medical monitoring and treatment for certified WTC-related health conditions to individuals directly affected by the 9/11 attacks in New York, the Pentagon and in Shanksville, Pennsylvania.

26. Acknowledging the vast differences in the program, Dr. Low assured Plaintiff that she would be properly trained and supported if she was offered the position as the program was governed by rules and regulations that were much different than a typical medical practice.

C. **Plaintiff's Employment with Defendant**

27. On July 11, 2022, Plaintiff was offered the position of Senior Nursing Administrator at the WTC Health Program, with an anticipated start-date of September 12, 2022.

28. Plaintiff officially commenced her employment at the WTC Health Program on September 12, 2022.

29. Plaintiff was to be supervised by Dr. Low, Ms. Broihier, and Dr. Benjamin J. Luft, the Director and Principal Investigator of the WTC Health Program.

30. Despite assurances to the contrary, no formal training was provided to Plaintiff beyond the basic orientation required for the handling of confidential health information.

31. Plaintiff only received sporadic trainings with no proper supervision or support from her supervisors. As expected, without the requisite training and proper supervision, Plaintiff faced many challenges in completing the tasks associated with her employment.

32. Plaintiff repeatedly asked her supervisors as to why she was not being trained properly similar to other employees. In response, they subjected her to verbal abuse and hostility.

**D.  Defendant's Discrimination and Harassment Towards Plaintiff Based on Her Age**

33. From the onset of Plaintiff's tenure as a Senior Nursing Administrator, she was treated differently than other employees due to the fact that she was one of the older employees at the WTC Health Program.

34. Upon information and belief, younger employees at the WTC Health Program were provided proper training, including trainings related to WTC-specific matters, as well as the specific documentary requirements of the WTC Health Program.

35. On September 20, 2022, during a meeting of the Quality Assurance Committee, which was comprised of managers of the WTC Health Program, it became apparent that Plaintiff was never properly "on-boarded" or provided with a "Welcome Packet," which would have provided Plaintiff with essential information that other, younger employees were provided with at the start of their employment.

36. Thereafter, on September 26, 2022, a mere two (2) weeks into her position, Dr. Luft, with unprovoked hostility, verbally abused Plaintiff by stating, "What do you even do here?" and "Why can't you just learn your position?"

37. Plaintiff again explained that she needed the proper training that she was promised to effectively fulfill her duties, yet Dr. Luft's verbal abuse and berating continued persisted throughout the entirety of her employment.

38. Soon after Dr. Luft's comments, Plaintiff's supervisors, along with other WTC Health Program employees, began making additional harassing comments to Plaintiff creating a hostile work environment due to her age.

39. Examples of such berating and demeaning comments Plaintiff endured are as follows:

- In October 2022, Ms. Broihier remarked to Plaintiff that, "[o]h, I guess that's just another senior moment by you."

- In November 2022, Dr. Luft asked Plaintiff, "why didn't you just retire after working at St. Catherine's for so long?"

- In January 2023, a WTC Health Program employee in a staff meeting stated that Plaintiff should likely be looking to retire soon, despite Plaintiff having only started her employment in September 2022.

- In January 2023, Dr. Luft once again berated Plaintiff, shouting, "[i]'s your job, just do it," and "Why did we hire you?" when Plaintiff again requested the trainings required for her position and which were afforded to younger employees.

- In February 2023, another co-worker remarked to Plaintiff that, "[i] doesn't matter if you work at WTC only for a short time or not."

- In March 2023, Dr. Luft remarked to Plaintiff that "[i]t must be so much harder for you to learn new things, as you're probably set in your ways."

40. These harassing comments, initiated by Dr. Luft and perpetuated by other employees, persisted throughout Plaintiff's employment, illustrating the age-based animus held by

Dr. Luft and others at WTC Health Program and highlighting the differing standards to which Plaintiff was held.

### E. Defendant's Disciplinary Treatment and Discipline Towards Plaintiff

41. In addition to the hostile comments which were focused on Plaintiff's age and her lack of training, Plaintiff was subjected to disparate treatment and discipline based on her age.

42. To this end, on or about March 1, 2023, Plaintiff was "written-up" and disciplined by Ms. Broihier for an alleged HIPAA violation that occurred when Plaintiff experienced a medical emergency which required her to immediately utilize a semi-private, code-locked, restroom when she was attempting to locate the owner of a patient file that was suspiciously left on Plaintiff's desk by an unknown staff member.

43. The restroom was unoccupied when Plaintiff entered, and due to her emergency, she did not hear anyone enter the restroom while she was in the stall.

44. Unbeknownst to Plaintiff, an unidentified staff member entered the restroom and, without asking a single question as to the nature of the file, such staff member removed the file and contacted the compliance department of the WTC Health Program.

45. Importantly, no actual dissemination of any patient information to an unauthorized third-party occurred during this event.

46. During the "write-up" meeting with Ms. Broihier, not a single question was asked to Plaintiff regarding the improper placement of the patient file on her desk, and no investigation was conducted by Ms. Broihier, or any other staff member of the WTC Health Program.

47. The alleged HIPAA violation by Plaintiff was later stated as a reason for her termination.

48. However, a younger professional employee named Lilah Moustafa ("**Moustafa**"), who was similarly situated to Plaintiff with managerial responsibilities over employees of her department, was involved in two (2) egregious HIPAA violations and was treated differently than Plaintiff.

49. Moustafa had access to, and control of, significant amounts of HIPAA protected information of the most confidential nature, namely, the highly-confidential prescription information of patients.

50. In or about June 2022, Moustafa committed a HIPAA violation which resulted in the actual unauthorized transmission of patient information via email without any discipline or "write-up" for her conduct.

51. On April 5, 2023, Moustafa engaged in a second HIPAA violation for the same conduct which only then resulted in a "write-up" which Plaintiff was tasked with "writing-up."

52. Unlike Plaintiff who was immediately "written-up" and submitted for Protocol Deviation Counseling, Moustafa was not terminated for her second violation and received no discipline for her initial HIPPA violation.

**F.   Defendant's Differential Treatment of Plaintiff**

53. Furthermore, like other employees at the WTC Health Program, Plaintiff was required to be provided with a performance review after forty-five (45) days of her employment (the "**Forty-Five Day Review**") which was to focus on the description of her position and the specific goals set out for Plaintiff by her supervisors.

54. Without explanation and despite Plaintiff's requests, Plaintiff did not receive the Forty-Five Day Review until April 14, 2023 -- six (6) months after the start of her employment.

55. When Plaintiff received the belated Forty-Five Day Review, no negative remarks were included and the review laid out a plan for the coming year that did not suggest any deficiencies in Plaintiff's work performance.

56. In fact, during the six (6) months after her hire, Plaintiff was never provided with a poor work review nor the promised and necessary formal training, yet was consistently and openly berated by Dr. Luft.

57. Such remarks over her tenure at the WTC Health Program came to a head on April 26, 2023, when Plaintiff curiously received notice of her impending "six-month review," which was being scheduled only two (2) weeks after the Forty-Five Day Review.

58. This unusual review process, not applied to younger employees, made it fundamentally impossible for Plaintiff to achieve any goals set out in the Forty-Five Day Review.

59. Prior to receiving her "six-month review," Plaintiff attended a meeting on April 26, 2023 in which Dr. Luft again openly berated Plaintiff in front of the staff stating, "[y]ou are incapable of learning how to do your job properly," and "[y]ou have nothing to offer this office at this stage in your career" causing Plaintiff extreme emotional distress, anxiety, and tears.

60. The fallout from this public berating would directly precipitate Plaintiff's termination

G. **Plaintiff's Termination**

61. Following the tumultuous meeting on April 26, 2022, where Dr. Luft openly berated Plaintiff, Plaintiff shared this information with her subordinates. As a direct result of the comments and frustration caused by consistent lack of support by her supervisors, differential treatment, and hostility, Plaintiff was placed on administrative leave.

62. On May 1, 2023, Plaintiff participated in a virtual meeting with Juliette Lowry, Assistant Director of Labor Relations at Stony Brook University, to discuss certain language allegedly utilized during the high-stress period on April 26, 2023.

63. The following day, on May 2, 2023, Plaintiff was required to attend a virtual meeting, which resulted in her termination.

64. During this final meeting, the WTC Health Program referred to several "issues" resulting in her termination based on pretexts, including (i) the HIPAA violation; (ii) alleged poor work performance; (iii) Plaintiff's alleged comment referred to the Office of Equity and Access; and (iv) Plaintiff's attitude towards her subordinates on April 26, 2023.

65. These problems do not comport with the Forty-Five Day review nor Plaintiff's decades-long exemplary work history, and can only be considered pretextual to a firing due to Plaintiff's age and the effects of the consistent hostile work environment.

66. Upon information and belief, two younger and less qualified employees have assumed Plaintiff's job duties since her termination.

67. Upon information and belief, the first prospective employee offered Plaintiff's position by the WTC Health Program was significantly younger than Plaintiff.

## FIRST CLAIM FOR RELIEF
**(Violation of Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.)**

68. Plaintiff repeats and realleges each and every allegation set forth above as if fully restated herein.

69. Plaintiff is a 64-year-old woman who falls within a protected class of individuals.

70. Defendant's unlawful and discriminatory termination of Plaintiff's employment on the basis of her age is a violation of the ADEA.

71. By its actions, including terminating Plaintiff, Defendant has treated Plaintiff differently from other employees on account of her age and discriminated against her in her employment in violation of the ADEA.

72. By its actions, Defendant has also subjected Plaintiff to a hostile work environment based solely on her age and denied her equal opportunity and treatment in the conditions of her employment.

73. The acts of Defendant have been pervasive, unfair, discriminatory, and disruptive to Plaintiff's physical and psychological well-being.

74. The actions and conduct of Defendant constitute unlawful behavior and Defendant's purpose was to create an intimidating, hostile and offensive work environment.

75. Defendant cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can the actions be otherwise justified. Any alleged nondiscriminatory reason is nothing more than a pretext so that Defendant could attempt to mask its actions.

76. As a direct and proximate result of Defendant's age discrimination, Plaintiff has suffered and continues to suffer damages, including emotional distress, mental anguish, lost wages, benefits, and other damages.

77. By reason of the foregoing, Plaintiff has become entitled to an award of compensatory and punitive damages in an amount to be determined by a jury at trial, together with costs and disbursements, attorney's fees, and appropriate interest.

**SECOND CLAIM FOR RELIEF**
**(N.Y. Exec. Law § 296 - Age Discrimination in**
**Violation of the New York State Human Rights Law)**

78. Plaintiff repeats and realleges each and every allegation set forth above as if fully restated herein.

79. Plaintiff is a 64-year-old woman who falls within a protected class of individuals.

80. The conduct by Defendant, as alleged herein, constituted unlawful discriminatory practices on the basis of age in violation of the New York State Human Rights Law § 296 *et seq*.

81. Defendant subjected Plaintiff to adverse employment actions on account of her protected status and denied her equal opportunity and treatment in the conditions of her employment.

82. By the acts and practices described above, Defendant directly, and/or through employees and/or agents, subjected Plaintiff to discrimination in violation of the New York State Human Rights law.

83. Further, Plaintiff was subjected to a work environment permeated with discriminatory intimidation, ridicule, and insults based on her age.

84. Defendant exercised managerial and/or supervisory control over Plaintiff, participated in discriminatory acts, and failed to take correction action.

85. As a result of Defendant's discrimination in violation of the New York State Human Rights Law, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, entitling her to injunctive and equitable monetary relief, and she has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life due to Defendant's actions, entitling her to compensatory damages.

86. By their age-based discriminatory actions alleged in violation of New York State Human Rights Law, Defendant has acted with malice or deliberate indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

### THIRD CLAIM FOR RELIEF
### (N.Y. Exec. Law § 296 – Hostile Work Environment in Violation of the New York State Human Rights Law)

87. Plaintiff repeats and realleges each and every allegation set forth above as if fully restated herein.

88. Defendant subjected Plaintiff to consistent offensive behavior and abuse, particularly through her superior, Dr. Luft, in violation of New York State Human Rights Law.

89. Defendant knew or reasonably should have known about the hostile work environment as Plaintiff asked multiple times to receive proper training within the company and failed to take appropriate remedial actions.

90. The hostile work environment, fueled by derogatory comments and unwarranted berating from supervisors, substantially interfered with Plaintiff's work performance and created an abusive, intimidating, and offensive atmosphere.

91. The consistent offensive comments and abuse permeated the workplace as to prevent Plaintiff from being successful in her position, altering the conditions of her employment.

92. From the onset of her employment, Plaintiff's supervisor abused Plaintiff, causing her mental anguish, limiting her ability to perform in her position, and humiliating her throughout her employment with Defendant.

93. The discriminatory comments which created a hostile work environment were at all times connected to her age, a protected class under New York State Human Rights Law.

94. As a result of Defendant's discrimination in violation of the New York State Human Rights Law, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, entitling her to injunctive and equitable monetary relief, and she has suffered anguish, humiliation, distress, inconveniences, and loss of enjoyment of lie due to Defendant's actions, entitling her to compensatory damages.

95. In their age-based discriminatory actions and ridicule alleged in violation of the New York State Human Rights Law, Defendant has acted with malice or deliberate indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

96. Under the New York State Human Rights Law, N.Y. Exec. Law § 297.10, Plaintiff is entitled to recover reasonable attorneys' fees and costs of this Action.


**[Remainder of Page Intentionally Left Blank]**

## VII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendant awarding her: (i) compensatory and punitive damages; (ii) declaring that Defendant has violated Plaintiff's rights in violation of the ADEA, and the New York State Human Rights Law; (iii) awarding Plaintiff reasonable attorney's fees, costs, and expenses incurred in prosecuting this Action; and (iv) granting Plaintiff all such other relief as may be just and proper.

Dated: New York, New York
January 9, 2024

**CERVINI LAW GROUP PLLC**

By: *Joseph P. Cervini, Jr.*
Joseph P. Cervini, Jr.
475 Park Avenue South, 18th Floor
New York, New York 10016
jcervini@cervinilawgroup.com
(917) 304-9231
*Counsel for Plaintiff*
*Donna Thomson*